UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| William H. SPOONER, an individual<br><br>Plaintiff,<br>v.<br><br>The ASSOCIATED PRESS, Inc.<br>A New York not-for-profit corporation<br>and<br><br>Jon KRAWCZYNSKI, an individual<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF**<br><br>**(Jury Trial Demanded)** |

Plaintiff William H. Spooner by and for his Complaint alleges as follows:

## NATURE OF THE ACTION.

1.  Plaintiff, a professional basketball Official (hereinafter "Referee" or "Official"), brings this action for defamation to his professional reputation resulting from a statement published on Twitter.com during a National Basketball Association game between the Minnesota Timberwolves and the Houston Rockets, held on January 24, 2011, at the Target Center in Minneapolis, Minnesota, that falsely attributed to Plaintiff comments made to the coach of the Timberwolves, Kurt Rambis, that Plaintiff did not in fact make, and stated and implied that Plaintiff was then engaged in fixing the game. This publication was made in the aftermath of the Tim Donaghy affair that scandalized all honest National Basketball Association Referees and the viewing public. Plaintiff seeks to recover damages for defamation *per se* to his professional and business reputation, a declaratory judgment that the Twitter publication constitutes defamation, and an injunction requiring the removal of defamatory statements from the Defendants' Internet postings.

Complaint                                                                                          1

## THE PARTIES.

2. Plaintiff William H. Spooner is an individual employed as a professional basketball Official by the National Basketball Association, or NBA Services Corp. ("NBA" or "League"). Plaintiff is also a member of the National Basketball Referees Association ("NBRA"), the Union representing the NBA Officials. In the course of Plaintiff's employment duties he officiates League sponsored games throughout the United States and Canada, including Minnesota. Plaintiff resides in Oak Park, California and is a citizen of that state.

3. Defendant, The Associated Press, Inc. ("AP") is a mutual news cooperative formed under the New York not-for-profit law with its principal place of business at 450 West 33rd Street, New York, New York, 10001; internet URL address: http://www.ap.org. Defendant AP is also a foreign corporation authorized to do business in Minnesota, registered with the Minnesota Secretary of State as an active foreign corporation, whose listed agent is David L. Pyle, with registered office address at: 511 11th Av. S., Suite 460, Minneapolis, MN 55415. Defendant AP conducts business in Minnesota, in part, through its "Minnesota Bureau Associated Press" located at 511 11th Av. S., Suite 460, Minneapolis, MN 55415; internet URL address: http://www.ap.org/minnesota.

4. Defendant Jon Krawczynski, is an AP Sports Writer employed by, or contracted as an agent for, Defendant AP and works out of AP's Minnesota Bureau. On information and belief, Defendant Krawczynski is a citizen of Minnesota

## JURISDICTION AND VENUE.

5. This Court has personal jurisdiction over Defendant AP because it may be served within the state of Minnesota through its authorized agent while doing business in Minnesota, or alternatively it may be served with process outside of Minnesota when such service is

constitutionally fair because Defendant AP has sufficient contacts with Minnesota pursuant to due process requirements and Minn. Stat. § 549.19.

6. This Court has personal jurisdiction over Defendant Krawczynski because he may be served with process within the state of Minnesota.

7. This Court has subject matter jurisdiction by diversity of citizenship under 28 U.S.C. § 1332(a)(1) because all parties are citizens of different states (Plaintiff is a citizen of California, Defendant AP a citizen of New York, and Defendant Krawczynski a citizen of Minnesota) and because the matter in controversy exceeds $75,000, exclusive of interest or costs.

8. Venue in this District is proper under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim (publication and injury) occurred in this District, or alternatively because any of these defendants are subject to personal jurisdiction in this District at the time of filing.

## THE FACTS.

9. Former professional basketball Referee Tim Donaghy was convicted in August 2007 after pleading guilty in federal court.

10. Donaghy's conviction followed an investigation by the Federal Bureau of Investigation into allegations that Donaghy bet on games he officiated and made calls affecting the point spread in those games.

11. The Donaghy affair was highly publicized in the sports media and elsewhere, and scandalized the League, honest NBA Referees, and the viewing public.

12. In the years following Donaghy's conviction, other events such as his accusations of a "culture of fraud in the NBA" have caused further scandal and attention to professional basketball Referees.

13.  The Donaghy affair remains a sensitive and hurtful memory in professional basketball to this day.

14.  Plaintiff, William H. Spooner, is a professional Referee for the NBA.

15.  Plaintiff Spooner has honestly officiated NBA games for 22 years.

16.  Crucial to Plaintiff Spooner's continued employment, his duties as an NBA Referee, and his chances of being assigned to officiate during the NBA Playoffs and Finals, is the preservation of his reputation for honesty and integrity in the discharge of his officiating duties.

17.  Plaintiff Spooner performs his officiating duties outside of, and uninvolved with, any matters of public controversy.

18.  Plaintiff Spooner does not grant media interviews.

19.  Plaintiff Spooner eschews contact with the public.

20.  Plaintiff Spooner does not participate in, or seek to influence, any public issues in his professional life.

21.  Defendant Krawczynski regularly covers the professional sports scene in Minnesota.

22.  Defendant Krawczynski is a sports writer for Defendant AP.

23.  Defendant Krawczynski publishes in a variety of media forums, including on the Internet through Twitter.com.

24.  Throughout the current professional basketball season, Defendant Krawczynski has made a theme of his reporting persistent criticism of NBA officiating.

25.  On January 24, 2011, the Minnesota Timberwolves, coached by Coach Kurt Rambis, played the Houston Rockets at the Target Center in Minneapolis, Minnesota.

26. Plaintiff Spooner was one of three Referees assigned by the NBA to officiate that game.

27. Defendant Krawczynski attended the game in his capacity as an AP sports writer, performing in the course of his duties as employee or agent of Defendant AP.

28. Defendant Krawczynski positioned himself at or near the edge of the court, on information and belief, at or near the "scorers' table."

29. At the 10:22 mark of the second period, Plaintiff Spooner made a foul call on a Minnesota Timberwolves player.

30. Between the first and second free throws, which followed the foul call, during a player substitution, Coach Rambis approached Plaintiff Spooner and a brief verbal exchange occurred.

31. In the verbal exchange, Coach Rambis questioned Plaintiff Spooner about the foul call described in paragraph 29 of this Complaint.

32. In response, Plaintiff Spooner told Coach Rambis that he would review the call at halftime and get back to him about it.

33. Coach Rambis walked away from Plaintiff Spooner, commenting with words to the effect of, 'that's fine, but how do I get those points back.'

34. As Coach Rambis walked away, Plaintiff Spooner placed his whistle back in his mouth and made no response to Coach Rambis's comment.

35. At no time did Plaintiff Spooner make any statement about "getting points back" to Coach Rambis or to anyone.

36. As was customary practice, Plaintiff Spooner intended to review the foul call by video play-back during half-time. He intended such review only for his personal edification and

not to determine whether to change the call, nor to determine whether to make any new, false calls.

37. Plaintiff Spooner did review the call during half-time, but did not change it nor did he make any new, false call based on it or for any other reason.

38. At 7:42 p.m. Central Standard time, Defendant Krawczynski published on his AP Twitter account the following statement: **"Ref Bill Spooner told Rambis he'd "get it back" after a bad call. Then he made an even worse call on Rockets. That's NBA officiating folks."**

39. Defendant Krawczynski published this statement on his AP Twitter account knowing at the time, or with reckless disregard of the truth at the time, or without due care of the truth at the time, that Plaintiff Spooner did not tell Coach Rambis that 'he'd get it back' nor utter any words to that effect, and therefore that the quoted attribution was, in fact, false.

40. Defendant Krawczynski's fabrication was instantly published on the Internet to thousands of "followers" on his AP Twitter account in Minnesota and across the nation.

41. Defendant Krawczynski's published Twitter statement knowingly, recklessly, and negligently implied to the NBA, the Coaches, the players, and to the viewing public that Referee Spooner intended to, and did, make a false officiating call on Coach Rambis's behalf in order to add points to the Timberwolves, a form of game fixing.

42. Plaintiff Spooner was subject to a disciplinary investigation by his employer, the NBA, as a result of Defendant Krawczynski's false publication.

43. Defendant Krawczynski's Twitter publication remains published on the Internet and publically accessible at http://twitter.com/APkrawczynski.

44. Defendant Krawczynski published his Twitter statement in furtherance of his duties as an employee or agent of Defendant AP.

45. Plaintiff Spooner's professional and business reputation as a working, officiating NBA Referee has been, and remains, disparaged.

46. Defendants have refused a demand by Plaintiff to retract their publication.

## COUNT I
### (For Defamation against Defendant Krawczynski directly and by *respondeat superior* against Defendant AP)

47. Plaintiff re-alleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as though fully set forth herein.

48. Defendant Krawczynski's statement on its face, and by its connotations and underlying premises, was and is false in material fact, and is necessarily derogatory of Plaintiff's integrity and honesty, which are essential to the performance of his profession and business of officiating NBA games.

49. Defendant Krawczynski's statement refers to the Plaintiff explicitly by name and title, and is about and concerns only the Plaintiff.

50. Defendant Krawczynski's statement was published to third parties via Internet on Twitter.com, and, on information and belief, by other means.

51. Defendant Krawczynski's statement was published without privilege. It was sent on an improper motive, knowing and intending publication of a false statement, or with reckless disregard of whether it was false, or with the exercise of reasonable care Defendant Krawczynski should have known that the statement was false or that it would create a false impression in a material respect.

52. Defendant Krawczynski's published statement constitutes defamation *per se* because it harms Plaintiff's professional or business reputation, through libel or slander on the Internet, in Minnesota and nationally.

53. Defendant Krawczynski's publication of his defamatory statement occurred within the scope of his employment duties with Defendant AP, or as an agent of Defendant AP under its control, actually and by right, or was procured by it.

54. Plaintiff's reputation within the League, and closely related communities, is injured.

55. As a result, Plaintiff has suffered harm caused by the Defendants' defamation, in excess of $75,000.

## PRAYER FOR RELIEF.

WHEREFORE, Plaintiff prays for the following relief against both Defendants, and each of them, jointly and severally, as follows:

56. A declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and/or Minn. Stat. 555.01 *et seq.*, declaring that the statement published by Defendants constitutes defamation *per se* under applicable law.

57. Judgment for compensatory damages in a reasonable amount in excess of $75,000;

58. Interest on the aforesaid amounts;

59. Issuance of a temporary and permanent injunction requiring Defendants to remove, or cause to be made inaccessible to the public, those previously published statements on Twitter.com, and any related publications, that this Court judges and declares to defame the Plaintiff, and/or to publish a retraction of said statement;

60. Such other and further relief as the Court may deem just and proper, including reasonable attorneys' fees and costs and disbursements of this proceeding.

61. Plaintiff reserves the right to move, pursuant to Minn. Stat. § 549.21 and Federal

Rule of Civil Procedure 15, for leave to amend his Complaint in order to add a separate and new claim for punitive damages pursuant to Minn. Stat. § 549.21.

### JURY TRIAL DEMAND

62. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues so triable on the applicable Count.

Respectfully submitted:

Dated: March 14, 2011

By: *Nicholas Paul Granath*
Nicholas Paul Granath, Esq.

Nicholas P. Granath, Esq. (MN Lic. No. 198729)
ngranath@ssmplaw.com
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2915 Wayzata Blvd.
Minneapolis, MN 55405
Tel. 612 341-9080
Fax 612 341-9079

Lucas K. Middlebrook, Esq. (*pro hac vice pending*)
Lmiddelbrook@ssmplaw.com
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
445 Hamilton Avenue, Suite 1204
White Plains, NY 10601
Tel. (914) 997-1346
Fax (914) 997-7125